IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| J.A.,[1] | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | 4:24-CV-898-BR |
| | § | |
| COMMISSIONER, | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| | § | |
|    Defendant. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**
**<u>AFFIRMING THE DECISION OF THE COMMISSIONER</u>**

Pursuant to 42 U.S.C. § 405(g), Plaintiff J.A. ("Plaintiff") seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner"), who denied Plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("SSA") for lack of disability. (ECF 1; *see also* ECF 8-1 at 16). Before the Court is Plaintiff's Brief, (ECF 9), the Commissioner's Response, (ECF 10), and Plaintiff's Reply, (ECF 11). After considering the pleadings, briefs, and administrative record, the Court AFFIRMS the Commissioner's decision.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a claim for a period of disability and disability insurance benefits on December 1, 2021, and filed an application for supplemental security income on November 10, 2022. (ECF 8-1 at 19). Plaintiff alleged disability beginning December 1, 2020, due to depression, panic disorder, anxiety

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

disorder, post-traumatic stress disorder, neck problems, degenerative disc disease, herniated disc, and osteoarthritis in the back, knee, and shoulder, as well as menstrual disorder, fibromyalgia, and lupus. (*Id.* at 84, 22). At the time of the filing, Plaintiff was 40 years old with limited education and an occupational history as a salesclerk, dishwasher, cleaner, and cashier. (*Id.* at 26).

Plaintiff's applications were initially denied on October 24, 2022, and subsequently denied upon reconsideration on April 3, 2023. (*Id.* at 19). After Plaintiff filed a written request for a hearing, the Administrative Law Judge ("ALJ") held a telephone hearing on October 27, 2023. (*Id.*). The ALJ issued an unfavorable opinion on April 24, 2024, that denied Plaintiff's claims and found that Plaintiff was not "under a disability within the meaning of the Social Security Act from December 1, 2020" through the date of the ALJ's decision. (*Id.* at 20).

The Appeals Council denied Plaintiff's requested review on April 24, 2024. (*Id.* at 6). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See* 42 U.S.C. §§ 405(g), 1383(c); *Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) ("[C]ourts generally agree that when the Appeals Council denied a request for review, the ALJ's decision becomes the Commissioner's final decision.") (quoting *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005)).

## II.     STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is defined as a work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b).

When reviewing disability determinations made by the Commissioner, the court is "limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). Substantial evidence is defined as "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

To determine whether substantial evidence of disability exists, the court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive. The reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). "The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner." *Hernandez v. Comm'r of Soc. Sec.*, No. SA-23-CV-00633-ESC, 2024 WL 4126699, at *1 (W.D. Tex. Sept. 5, 2024).

Conflicts in the evidence are resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). "Reversal is inappropriate if the agency's error was harmless—if it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Moreno v. Comm'r of Soc. Sec. Admin.*, 698 F. Supp. 3d 935, 939 (W.D. Tex. 2023) (cleaned up) (quoting *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. If the court finds

substantial evidence to support the Commissioner's decision, the court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

### III.     SEQUENTIAL EVALUATION PROCESS

At step one of the five-step sequential evaluation process[2], the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date. (ECF 8-1 at 21). At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, mild degenerative joint disease, osteoarthritis, morbid obesity, anxiety, depression, and post-traumatic stress disorder. (*Id*. at 22). However, at step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the requisite criteria for severity under 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 23).

Prior to step four, the ALJ must first determine Plaintiff's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The RFC is the most a claimant can still do despite their limitations. 20 C.F.R. § 404.1545(a)(1). The "nature and extent" of a claimant's physical, mental, and other abilities affected by impairment(s) are assessed to determine a claimant's "RFC for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b)-(d).

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (ECF 8-1 at 27). However, the ALJ determined that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not

---

[2] "In evaluating a disability claim, the [ALJ] conducts a five step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the burden of proof in establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ and the Social Security Administration to show that there is other substantial work in the national economy that the plaintiff is capable of performing. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F. 3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)). Before proceeding to steps four and five, the Commissioner must assess a claimant's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

entirely consistent with the medical evidence and other evidence in the record." (*Id*.). Therefore, the ALJ found that Plaintiff had the

> RFC to perform light work…except she can stand and/or walk 4 hours in an 8-hour workday with no more than one hour standing or walking before being allowed to sit. She can sit 6 hours in an 8-hour workday....is able to occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds….can occasionally stoop, balance, crouch, crawl, and kneel….can frequently perform reaching, handling, fingering, and feeling….must avoid concentrated exposure to temperature extreme[s].

(*Id*. at 25). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (*Id*. at 33). At step five, the ALJ determined that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills." (*Id*.). The ALJ determined that, given the limitations placed on Plaintiff's ability to perform the full range of light work, Plaintiff "would be able to perform the requirements of representative occupations" such as small parts assembler, inspector and hand packager, bakery worker conveyer line, food and beverage order clerk, optical assembler, and table worker. (*Id*. at 34).

## IV. THE ALJ'S FINDINGS

The ALJ found that the "longitudinal evidence of the record failed to show" Plaintiff's menstrual disorder consisting of abnormal uterine bleeding, iron deficiency anemia, and psoriasis was severe. (ECF 8-1 at 22). The ALJ considered Plaintiff's fibromyalgia and lupus non-severe because, among other things, "a review of the evidence revealed there was no actual diagnosis for lupus or fibromyalgia by an acceptable medical source as specified under 20 CFR 404.1502 and 416.902." (*Id*. at 23). Also, the "non-medically determinable allegation of degenerative joint disease of the shoulders…was not present when investigated by x-rays." (*Id*.). The ALJ gave "special attention…to the duration and frequency of medical conditions for which [Plaintiff] sought treatment." (*Id*. at 22). Thus, the ALJ did not consider as severe

5

other conditions "not specifically mentioned" in her decision, "but which may be mentioned briefly in the record." (*Id.*).

Plaintiff's degenerative disc disease, though considered severe, did not meet or equal the required listings of 1.15 – disorders of the skeletal spine resulting in compromise of a nerve root, or 1.16 – lumbar spinal stenosis resulting in compromise of the cauda equina. (*Id.* at 23). Regarding Plaintiff's diagnosis of degenerative joint disease and osteoarthritis, though severe, the ALJ found that "the requirements of 1.18 are not met or equaled." (*Id.*). The ALJ observed that the objective medical evidence and other evidence showed consistent improvement regarding Plaintiff's low back and cervical spine pain, as well as a "normal range of motion in the musculoskeletal system and cervical back." (*Id.* at 28). Plaintiff's symptoms were improved by an anterior cervical discectomy and fusion procedure and steroid injections. (*Id.* at 29). Also, the results of musculoskeletal and neurological exams were consistently normal. (*Id.* at 28-29).

Additionally, the ALJ found that Plaintiff's mental health impairments of depression, panic disorder, anxiety disorder, and post-traumatic stress disorder, though severe, when "considered singly and in combination do not meet or medically equal the criteria listings of 12.04, 12.06, and 12.15." (*Id.* at 23). Medical staff consistently noted Plaintiff's flat affect and that Plaintiff was sad, dysphoric, anxious, and depressed. (*Id.* at 30-31). Nonetheless, medical staff also consistently observed that Plaintiff was cooperative, had independent decision-making skills, fair judgment, normal orientation to person, place, time and situation, and normal thought processes that were linear, goal directed, logical, and well-organized. (*Id.*). Further, medical staff also regularly noted that Plaintiff had normal appearance, eye contact, behavior, speech, language, sensorium, orientation, memory, fund of knowledge, intelligence, abstraction ability, associations, thought content, insight, and judgment. (*Id.*).

## V. THE ALJ'S RFC ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff challenges the ALJ's decision as unsupported by substantial evidence because the ALJ relied on updated medical records when assessing Plaintiff's RFC—without the support of an updated medical opinion. (ECF 9 at 2). The State Agency Medical Consultants ("SAMCs") provided work limitations that the ALJ found "largely persuasive." (ECF 8-1 at 32). The ALJ then based the RFC determination upon the SAMCs' opinions, but was persuaded that Plaintiff "was slightly more limited than assessed by the [SAMCs] at the reconsideration level." (*Id.*). Therefore, Plaintiff argues that the ALJ adopted a "slightly more limited" assessment due to additional evidence received at the hearing. (ECF 9 at 6). This assessment reduced the amount of time Plaintiff could stand and/or walk in an eight-hour workday by two hours. (*Id.*) (noting that the SAMCs suggested that Plaintiff could stand and/or walk for six hours in an eight-hour workday.). Plaintiff argues "it is conceivable that [the ALJ] would have reached a different conclusion" if the ALJ had "obtained an updated medical opinion or relied on [Plaintiff's] testimony." (*Id.*); *see also Ripley v. Chater* 67 F.3d 552 (5th Cir. 1995).

### A. Absence of a Medical Opinion is Not Fatal to an ALJ's Formulation of an RFC Assessment

Plaintiff contends that the ALJ's findings are "not based on any medical opinion or the ALJ's observations during the hearing. The ALJ did not rely on [Plaintiff's] testimony." (ECF 9 at 6). However, the absence of a medical opinion is not fatal to an ALJ's formulation of an RFC. *Ripley*, 67 F.3d at 557. When a medical statement is not provided, a court's "inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id*. Substantial evidence requires that the record clearly establish the effect of a claimant's condition on their ability to work. *Id.* In *Ripley*, though the record included "a vast amount of medical evidence" establishing that the claimant had a severe condition, "[t]he only evidence regarding Ripley's *ability to work* came from Ripley's own testimony." *Id*. (emphasis added). The court in *Ripley* remanded the ALJ's decision because it "was not supported by

7

substantial evidence." *Id*. However, unlike in *Ripley*, the ALJ's formulation of Plaintiff's RFC was largely predicated on medical opinions that assessed Plaintiff's ability to work.

Plaintiff contends that when the ALJ created a slightly more limited assessment due to the additional evidence received at the hearing, this resulted in an absence of a medical opinion by way of an implicit rejection. (ECF 9 at 8-9) (citing *Silves H. v. Kijakazi*, No. 3:22-CV-286-K-BN, 2022 WL 17345924, *10 (N.D. Tex. Nov. 14, 2022)). In *Silves*, the court determined that the ALJ implicitly rejected the SAMCs' opinions; however, this did not end the analysis. *Silves H. v. Kijakazi*, No. 3:22-CV-286-K-BN, 2022 WL 17345924 (N.D. Tex. Nov. 14, 2022), *rec. adopted,* No. 3:22-CV-286-K-BN, 2022 WL 17345778 (N.D. Tex. Nov. 30, 2022). A complete application of *Silves* follows two steps that mirror *Ripley*: step one, whether the ALJ determined additional limitations that were not justified or supported by medical opinions; and, step two, whether other substantial evidence is present to compensate for the absence of a medical opinion. *Id*. Thus, step one is not dispositive of the inquiry. As in *Ripley*, the ALJ's determination could still survive if that determination is otherwise supported by substantial evidence in the record. *See id*.; *see also Ripley*, 67 F.3d at 552.

Applying *Silves* step one, the ALJ determined additional limitations that were not fully supported by the SAMCs. (ECF 8-1 at 32). Thus, as in *Silves*, the ALJ added limitations not included by the SAMCs. *See Silves H.,* 2022 WL 17345924, at *4. Assuming *arguendo* that this results in an implicit rejection of the SAMCs' assessment, and, applying step two, the ALJ's determination still survives because the ALJ's decision is supported by substantial evidence.

**B. The ALJ Properly Discussed Evidence and Adequately Explained Her Rationale.**

In *Silves*, the ALJ did not predicate further limitations upon any medical opinion or other evidence. *Id*. at *4. Instead, the *Silves* ALJ generally referred to "the entire record" and the claimant's "ability to complete activities of daily living." *Id*. at *3. By contrast, within the present matter, the ALJ sufficiently

8

identified medical and other evidence as the basis for her findings. Here, the ALJ relied on the "largely persuasive" medical opinion and adopted work limitations assessed by the SAMCs. (ECF 8-1 at 32). The ALJ then applied medical evidence and other evidence presented at the hearing to formulate a slight variation from the adopted limitations. As the Commissioner asserts, "[h]ere, unlike in *Silves*, the ALJ properly discussed the evidence she considered and adequately explained her rationale for the RFC finding." (ECF 10 at 7). The ALJ went well beyond the analysis found in *Silves*: the ALJ "properly found that the record as a whole, including Plaintiff's subjective statements, supports additional limitations in the RFC findings beyond those assessed by the state agency consultants." (*Id*. at 8).

The ALJ's use of medical evidence is important to highlight, as Plaintiff relies on *Lozano v. Commissioner, Social Security Administration* and *Esther D.J. v. Kijakazi* to argue that the ALJ "succumbed to the temptation to play doctor." (ECF 9 at 7-8). However, Plaintiff's reliance upon each of these cases is misplaced. In *Lozano*, "the ALJ 'considered' the SAMCs' opinions but rejected them as 'insufficiently restrictive' and 'unpersuasive.'" *Lozano v. Comm'r, Soc. Sec. Admin.*, No. 4:21-CV-1365-P, 2023 WL 2618132, at *5 (N.D. Tex. Mar. 2, 2023), *rec. adopted*, No. 4:21-CV-01365-P, 2023 WL 2619311 (N.D. Tex. Mar. 23, 2023). Additionally, the *Lozano* ALJ based the final RFC assessment upon multiple impairments while the SAMCs based their RFC assessment upon a single impairment. *Id*. at *3-5. The backdrop for the *Lozano* court's conclusion that "the ALJ appears to have been playing the role of doctor" was that the ALJ's RFC determination included "new, more restrictive limitations" containing "no medical opinion supporting which work tasks [claimant] could perform" when considering the impairments not assessed by the SAMCs. *Id*. at *5.

The *Lozano* court is clear that "the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record….If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error." *Id*. It was only because "the ALJ made the physical

RFC assessment regarding [claimant's] limitations without a medical opinion addressing the effects" of the additional impairments that the *Lozano* court concluded the Commissioner's final decision was not supported by substantial evidence. *Id*. at *6. Similarly, in *Esther D.J.*, "the ALJ rejected the only available medical opinion regarding [the claimant's] mental limitations" and "[a]s to physical limitations…there is no medical opinion evidence to support this RFC determination." *Esther D. J. v. Kijakazi*, No. 5:20-CV-239, 2022 WL 5434335, at *5-6 (S.D. Tex. Aug. 3, 2022), *rec. adopted*, No. 5:20-CV-239, 2022 WL 5430194 (S.D. Tex. Aug. 19, 2022).

The present matter is not one wherein the ALJ formulated an RFC without the support of a medical opinion, as occurred in both *Lozano* and *Esther D.J.* Nor is this a case where "there are no medical opinions of record, and the ALJ independently analyzed the raw medical data without any guidance from medical professionals." *Fleming v. Saul*, No. SA-19-CV000701, 2020 WL 4601669, at *9 (W.D. Tex. Aug. 10, 2020) (cleaned up). Additionally, this is not a situation wherein the "ALJ has failed to either elicit or take into account the opinion of a treating or examining physician." *Montoya v. Berryhill*, No. 3:16-CV-1594-D0BN, 2017 WL 3835950, at *4 (N.D. Tex. Aug. 1, 2017), *rec. adopted*, 2017 WL 3834753 (N.D. Tex. Aug. 31, 2017). Further, there is no indication that the medical evidence presented at the Plaintiff's hearing widely varied from the previous findings, or that there was a significant passage of time between the assessment by the SAMCs and the hearing. *See Kenneth S. v. Saul,* No. 3:18-CV-2450-L-BN, 2019 WL 3881618, at *5-8 (N.D. Tex. July 31, 2019), *rec. adopted*, No. 3:18-CV-2450-L, 2019 WL 3859653 (N.D. Tex. Aug. 15, 2019) (noting that the court found an absence of substantial evidence when the ALJ did not request an updated medical opinion after two years had passed between the medical consultant's examination and the ALJ's determination and the claimant "underwent 'thirteen invasive procedures'" that resulted in a significant change in circumstances.).

Here, the ALJ largely based Plaintiff's RFC upon the SAMCs' opinions. From that foundation, the ALJ then properly applied other medical evidence in the record and Plaintiff's own statements presented at the hearing to formulate slightly more restricted limitations than those of the SAMCs. As such, the ALJ's use of medical evidence does not rise to the level of impermissibly interpreting medical evidence without support. *Lozano*, 2023 WL 2618132, at *5. The ALJ relied on substantial evidence to make an RFC determination.

### C. Plaintiff has not Demonstrated Prejudice Resulting from the ALJ's Decision.

Conflicts in the evidence are resolved by the Commissioner, not the courts. *Laffoon*, 558 F.2d, at 254. "Reversal is inappropriate if the agency's error was harmless—if it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Moreno*, 698 F. Supp. 3d, at 939. "Procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Thus, a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Id*. A plaintiff must "demonstrate prejudice resulting from the ALJ's errors." *Allen v. Saul*, No. 4:19-CV-1575, 2020 WL 5412630, at *7 (S.D. Tex. Sept. 9, 2020) (citing cases). "Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision." *McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 837 (N.D. Tex. 2008).

Plaintiff fails to demonstrate prejudice. Plaintiff argues not only that "[t]he failure of the ALJ to obtain an updated medical opinion was prejudicial…because it cast doubt on the ALJ's decision," but also that "the updated medical opinion could conceivably, have included greater limitations [than what the ALJ found]. This, in turn could have altered the ALJ's finding that [Plaintiff] could perform a significant number of jobs in the national economy." (ECF 9 at 9) (cleaned up) (quoting *Silves H.*, 2022 WL 17345924, at *12). However, because the ALJ found the SAMCs provided "largely persuasive"

11

work limitations, adopted those limitations, and supported the additional limitations with substantial evidence from the record, Plaintiff has not met her burden to show that her substantial rights have been affected.

## VI.  CONCLUSION

For the reasons stated above, the decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED.**

**ENTERED April 24, 2025.**

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE